J-A05007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MARCUS HERNANDEZ | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| E*TRADE SECURITIES, LLC AND FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. AND MATHEW P. DENN, ATTORNEY GENERAL FOR THE STATE OF DELAWARE | |
| APPEAL OF: MATTHEW P. DENN, ATTORNEY GENERAL FOR THE STATE OF DELAWARE | |
| Appellee | No. 1316 EDA 2015 |

Appeal from the Judgment Entered July 7, 2015
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2014-06945

-------------------------------------------------------------------------------------

| | |
|---|---|
| MARCUS HERNANDEZ | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| E*TRADE SECURITIES, LLC AND FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. AND MATHEW P. DENN, ATTORNEY GENERAL FOR THE STATE OF DELAWARE | |
| | No. 1639 EDA 2015 |

Appeal from the Judgment Entered July 7, 2015
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2014-06945

J-A05007-16

BEFORE: OLSON, J., OTT, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.: **FILED JUNE 14, 2016**

These consolidated cross appeals arise from the judgment that resulted from the order entered on April 10, 2015, in the Court of Common Pleas of Montgomery County, that granted in part, and denied in part, the Petition to Confirm Arbitration Award filed by Designated Appellant Marcus Hernandez (Hernandez), and the Petition to Vacate Arbitration Award filed by Matthew P. Denn, Attorney General for the State of Delaware (Attorney General).[1, 2] Specifically, the trial court confirmed the Arbitration Award that recommended expungement of seven customer complaints against Hernandez's securities license, and vacated the Arbitration Award regarding

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Although the Attorney General and Hernandez brought their respective appeals from the trial court's April 10, 2015 order, the appeal lies from the judgment entered as a result of that order, not from the order itself. **See Seay v. Prudential Ins. Co.**, 543 A.2d 1166 (Pa. Super. 1988) (42 Pa.C.S. §§ 7320 and 7316 must be read in conjunction with each other; § 7320 sets forth the general rule for order from which an appeal may be taken, while § 7316 mandates that judgment shall be entered on such orders). Judgment was later entered on July 6, 2015. Therefore, the notices of appeal relate forward to July 6, 2015. **See** Pa.R.A.P. 905(a) (stating notice of appeal filed after announcement of determination but before entry of appealable order shall be treated as filed after such entry and on day of entry). We have therefore corrected the captions in the appeals.

[2] Pursuant to Pa.R.A.P. 2136(a), Hernandez is the designated appellant in these consolidated appeals, even though the Attorney General's appeal from the trial court's April 10, 2015 order was filed prior to Hernandez's cross-appeal.

expungement of one complaint, namely, the complaint made by Jeffrey B. Horowitz, Trustee of the Horowitz Family Trust ("Horowitz complaint"). Hernandez claims that the trial court erred in vacating the arbitration award with respect to expungement of the Horowitz complaint. Appellee, Financial Industry Regulatory Authority, Inc. (FINRA), asks this Court to uphold the trial court's order.[3] The Attorney General contends that the trial court erred in confirming the arbitration award as to the other seven customer complaints.[4] Based upon the following, we affirm.

Briefly, on December 24, 2013, an arbitration award was entered in favor of Hernandez, a financial advisor, recommending expungement of eight, publicly available, customer complaints that arose as a result of investments sold by Hernandez during his employ with E*Trade. On March 28, 2014, Hernandez petitioned the trial court to confirm the arbitration award, naming E*Trade and FINRA as respondents. Subsequently, the Attorney General was granted leave to intervene and filed a petition to

_____

[3] FINRA, in its brief, states: "Appellee, FINRA, appearing solely in its regulatory capacity, seeks to uphold the Lower Court's Order, which denied expungement of a single customer complaint by Jeffrey B. Horowitz, Trustee of the Horowitz Family Trust ("Horowitz complaint") from Mr. Hernandez's Central Depository ("CRD®") record. FINRA owns and operates the electronic database CRD® from which Mr. Hernandez sought to have the Horowitz complaint expunged." FINRA's Brief at 1.

[4] We note that North American Securities Administrators Association, Inc. (NASAA) has filed an *amicus curiae* brief on appeal and takes the same position as the Attorney General. **See** NASAA *Amicus Curiae* Brief.

- 3 -

vacate the arbitration award. On April 10, 2015, the trial court confirmed the award regarding expungement of seven customer complaints; the trial court vacated the award regarding expungement of the Horowitz complaint, finding an "irregularity" in the arbitration because expungement of the Horowtiz complaint had been previously litigated and denied.

The Honorable Richard P. Haaz has summarized in detail the background of this case, as follows:

> Hernandez is a financial advisor who was formerly employed by E*Trade Securities, LLC (E*Trade) from 2006 through January 2008. Hernandez is registered as a general securities representative with the Financial Industry Regulatory Authority, Inc. (FINRA) and as a broker-dealer agent in Pennsylvania, Delaware and other states. As part of FINRA's regulatory scheme, various forms and information are stored in a Central Registration Depository (CRD). All customer dispute disclosures, customer complaints and arbitration filings are stored in the CRD. A limited amount of this information is available to the public free of charge to allow investors to research investment firms and individual brokers. FINRA requires brokers, like Hernandez, to agree to arbitrate all customer dispute claims.
>
> During his employment at E*Trade, Hernandez sold a[u]ction rate securities (ARS) which are defined by FINRA as:
>
>> Long-term investments that have a short-term twist: the interest rates or dividends they pay are reset at frequent intervals through auctions, which typically occur every 7, 14, 28 or 35 days. Usually, these auctions also provide the primary source of liquidity to ARS investors who wish to sell their investment.
>
> Eight customer complaints were made against Hernandez relating to the sale of ARS during his employment with E*Trade. Four of these were informal complaints which did not proceed to arbitration or litigation. The remaining four complaints proceeded to FINRA Dispute Resolution Arbitration. Two complaints settled

before an arbitration hearing was conducted. The remaining two complaints, made by Jeffrey B. Horowitz ("Horowitz") and David and Amy Wechsler ("Wechsler"), resulted in arbitration awards in favor of the complainants in each case. All eight of these customer complaints appeared on Hernandez's CRD report.

Hernandez filed a "statement of claim" with FINRA on August 22, 2012 seeking to expunge all eight complaints from his CRD record. He appeared before a FINRA arbitrator ("Arbitrator") for an expungement hearing on November 12, 2013. On December 24, 2013, the Arbitrator issued an award (Award) "recommending" the expungement of all references to the eight customer disputes on Hernandez's CRD report.

On March 28, 2014, Hernandez filed a Petition to Confirm Arbitration Award in this court pursuant to FINRA Rule 2080, which states:

> Members or associated persons seeking to expunge information from the CRD system arising from disputes with customers must obtain an order from a court of competent jurisdiction directing such expungement or confirming an arbitration award containing expungement relief.

The Respondents to this Petition were E*Trade Securities, LLC[3] and FINRA[4] as required by FINRA Rule 2080. On May 12, 2014, the Attorney General filed a Petition to Intervene which was granted by the court on June 20, 2014. On July 1, 2014, the Attorney General filed an Answer in opposition to Hernandez's Petition to Confirm and a Counter-Petition to Vacate Arbitration Award arguing the award suffered from numerous irregularities. On November 25, 2014, the Attorney General filed an Amended Answer and Counter Petition to Vacate Arbitration Award, which added the additional argument that the arbitration Award was merely a recommendation and not a confirmable award.[5]

---

[3] E*Trade filed an Answer stating it did not take a position on Hernandez's Petition to Confirm. [*See also* Oral Argument N.T. 3/30/15, 40:15-45:6]

[4] FINRA filed an Answer and New Matter which opposed Hernandez's Petition to Confirm expungement of the Horowitz complaint.

[5] The Attorney General filed a Motion to Amend Answer and Counter Petition which was contested. After oral argument, the court granted the Attorney General leave to file an Amended Answer and Counter-Petition.

_____

On January 29, 2015, the Attorney General filed a Motion for Summary Judgment, which requested the same relief in the Amended Answer and Counter-Petition. Oral argument was held before the undersigned on March 30, 2015. On April 10, 2015, the court … vacat[ed] the expungement award with respect to one customer complaint, that of Jeffrey Horowitz ("Horowitz"), and confirmed that part of the award which expunged the remaining seven customer complaints[.] [The trial court noted in the April 10, 2015, order, that there was no need for a separate order regarding the Attorney General's motion for Summary Judgment since its claim for relief was subsumed in the Counter-Petition to Vacate Arbitration Award.]

Trial Court Opinion, 7/22/2015, at 1–4. The trial court explained that it applied Pennsylvania's common law arbitration standard, 42 Pa.C.S. § 7341, and vacated the arbitration award as to the Horowitz complaint based upon a "procedural irregularity" in the arbitration proceeding, specifically, relitigation of the expungement issue in violation of collateral estoppel. **See id.** at 14.

The Attorney General filed an appeal and Hernandez filed a cross appeal.[5] As we have already noted, Hernandez is the designated appellant pursuant to Pa.R.A.P. 2136(a). **See** Footnote 2, **supra**.

In the appeal at 1639 EDA 2015, Hernandez raises the following claim:

Where the arbitrator issued an Arbitration Award recommending expungement of the Hororwitz Complaint, should the award be confirmed where (1) the standard of review of arbitration awards is very limited; (2) no party to the arbitration raised collateral estoppel and/or res judicata as a basis to object to the expungement of the Horowitz Complaint; (3) there is no basis under the Federal Arbitration Act (FAA) to vacate the Arbitration Award based on an alleged "irregularity"; and (4) in any event, no "irregularity" exists since, at most, the arbitrator made [an] error [of] law by failing to apply the principles of collateral estoppel and/or res judicata (to the extent those principles even applied).

Hernandez's Brief at 3.

In the appeal at 1316 EDA 2015, the Attorney General raises two claims:

Did the Trial Court err as a matter of law in granting (in part) [Hernandez's] Petition to Confirm, given that the Expungement Recommendation that was the subject of the Petition to Confirm is not a confirmable arbitration award for the reason that (a) the underlying proceeding was not a valid arbitration, in that the proceeding did not involve a dispute, or (b) the Expungement Recommendation was not a full and final resolution of the claims presented in that it only "recommended" the requested relief?

_____

[5] The Attorney General and Hernandez both complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

- 7 -

Did the Trial Court err as a matter of law or abuse its discretion in denying (in Part) the Attorney General's Counter-Petition to Vacate the Expungement Recommendation, given that the rendition of the Expungement Recommendation was irregular within the meaning of 42 Pa.C.S. § 7341 because (a) relitigation of the expungement of the Wechsler complaint was barred by the doctrine of *res judicata*; (b) the Expungement Arbitrator failed to adhere to the rules governing the Expungement Proceeding; and (c) the parties whose truthfulness Hernandez put at issue were not notified of or provided an opportunity to participate in the proceeding?

Attorney General's Brief at 5.

Preliminarily, we state our standards of review.

"Questions of law are subject to *de novo* review, and our scope of review is plenary." ***Moscatiello v. Hilliard***, 939 A.2d 325, 327 (Pa. 2007).

"[W]e will reverse a trial court's decision regarding whether to vacate an arbitration award only for an abuse of discretion or error of law." ***Joseph v. Advest, Inc.***, 906 A.2d 1205, 1208 (Pa. Super. 2006).

Furthermore,

[t]he award of an arbitrator in a nonjudicial arbitration which is not subject to statutory arbitration or to a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award. The arbitrators are the final judges of both law and fact, and an arbitration award is not subject to reversal for a mistake of either. A trial court order confirming a common law arbitration award will be reversed only for an abuse of discretion or an error of law.

***U.S. Claims, Inc. v. Dougherty***, 2006 PA Super 337, 914 A.2d 874, 876 (Pa. Super. 2006) (internal citations omitted); 42 Pa.C.S. § 7341. "The appellant bears the burden to establish

- 8 -

both the underlying irregularity and the resulting inequity by clear, precise, and indubitable evidence." **McKenna v. Sosso**, 1999 PA Super 299, 745 A.2d 1, 4 (Pa. Super. 1999).

**Andrew v. CUNA Brokerage Servs**., 976 A.2d 496, 500 (Pa. Super. 2009).

## HERNANDEZ APPEAL

## 1639 EDA 2015

We first address the first and third arguments raised by Hernandez, regarding the applicable standard of review. Hernandez contends that this case "involves interstate commerce"[6] and, therefore, the trial court should have applied the Federal Arbitration Act (FAA) standard of review, 9 U.S.C. § 10, rather than the Pennsylvania common law standard under 42 Pa.C.S. § 7341. This identical argument, however, was rejected in **Trombetta v. Raymond James Financial Services, Inc.**, 907 A.2d 550 (Pa. Super. 2006).

In **Trombetta**, this Court held that the standards of review set forth in 42 Pa.C.S. § 7341 are not pre-empted by the standards outlined in the FAA:

> [W]e believe the FAA standards of review cannot pre-empt the Pennsylvania standards of review for arbitration awards unless the Pennsylvania standards of review frustrate the underlying objectives of the FAA, as standards of review are an inherently procedural mechanism used to facilitate judicial resolution of controversies **after** the underlying arbitration agreement already has been enforced in accordance with the FAA.

---

[6] Hernandez's Brief at 12.

*Id.* at 568 (emphasis in original). This Court noted that "the primary purpose of the FAA is to overcome judicial hostility towards arbitration, without displacing state arbitration schemes, by giving arbitration agreements equal standing with other contractual agreements [and] requiring courts to enforce arbitration agreements pursuant to their terms." *Id.* at 569. This Court concluded "that the standards of review outlined in 42 Pa.C.S. § 7341 facilitate rather than impede the goals of the FAA," *id.*, and refused to apply the FAA therein.[7] Accordingly, in light of ***Trombetta***, we find the FAA is clearly inapplicable.

The second and fourth arguments raised by Hernandez relate to his contention that the trial court improperly vacated the arbitration award as to expungement of the Horowitz complaint upon the basis of an "irregularity."

Pursuant to Section 7341, common law arbitrations are "binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or ***other irregularity*** caused the rendition of an unjust, inequitable or unconscionable award." 42

---

[7] The ***Trombetta*** Court also found that Section 10 of the FAA, setting forth the federal standards of review, by its plain language only applies to proceedings in United States district courts.

Pa.C.S. § 7341 (emphasis added).[8] Hernandez maintains there was no "irregularity" in the arbitration with regard to the Horowitz complaint.

Hernandez argues there is no dispute that in the arbitration wherein he sought expungement of the eight customer complaints, including the Horowitz complaint, he followed the FINRA arbitration rules in a precise manner. *Id.* at 15. He states he properly named as a respondent E*Trade, his former employer responsible for reporting the customer complaints on his license, and that E*Trade through counsel took no position on the expungement of any complaints, including the Horowitz complaint. *Id.* Hernandez points out that, although he was required to name FINRA as a respondent in the trial court action for confirmation of the expungement award, FINRA had no requirement that it be named in the arbitration expungement proceedings.[9] *Id.*

Hernandez points to the trial court's statement in its decision that an irregularity only occurs in connection with "*the process* employed in reaching the result of the arbitration, not the result itself." Hernandez's

_____

[8] As the trial court properly noted, the Pennsylvania common law arbitration standard of review applied in this matter, "[s]ince there was no express agreement to apply either state or federal statutory arbitration[.]" Trial Court Opinion, 7/22/2015, at 8.

[9] Hernandez notes that FINRA has recently provided updated guidance that states "[w]hen an arbitration panel has issued an award denying a broker's expungement request, the broker may not request expungement in another arbitration case." Hernandez's Reply Brief at 37.

Brief at 17, *citing* Trial Court Opinion, 7/22/2015, at 13 (emphasis added). Hernandez notes the trial court also recognized that "courts have generally denied relief where an irregularity has been alleged …." *Id.* Hernandez asserts the cases cited by the court in support of its determination that an "irregularity" occurred with respect to the Horowitz complaint are distinguishable and involve procedural irregularities. *Id.* at 18. Hernandez maintains that "[a]t most, [the arbitrator] committed an error of law by not applying principles of *res judicata* and/or collateral estoppel." *Id.*

In response, FINRA disputes Hernandez argument that "at most" the arbitrator committed an "error of law" by not applying principles of *res judicata* and/or collateral estoppel. FINRA asserts:

> [T]his was not a minor casual mistake; in the current arbitration, there was no party in interest to oppose the request for expungement. Mr. Horowitz was not a party; FINRA was not a party. The current arbitrator did not just ignore the Original Award – he essentially nullified the original arbitration, where, real parties in interest attended and argued the case before a full panel that recommended expungement of others and unquestionably, on the record before them, denied expungement to Mr. Hernandez. Mr. Hernandez did not seek to vacate that Original Award, which would be the only permissible legal manner in which that Original Award could be diminished.

FINRA's Brief at 12-13 (footnote omitted). Similarly, the Attorney General responds:

> [A] violation of *res judicata* rises above the level of a garden-variety legal error. If the doctrine could be ignored, then an arbitration party would be free to repeatedly submit a claim to binding arbitration — experimenting with different evidence, arbitrators and parties, over and over again — until they got the desired result. Ignoring the preclusive effect of a prior arbitration

- 12 -

is irregular within the meaning of 42 Pa.C.S. § 7341 because it demonstrates ignorance of the law and indifference to justice (if not bad faith). If allowed, it would lead to competing awards, serial litigation, and other untenable consequences.

Attorney General's Brief at 54.

The trial court analyzed the Horowitz complaint, as follows:

Horowitz filed his Statement of Claim on February 4, 2009 against E*Trade, Hernandez and three other individual respondents. Horowitz requested relief in the form of compensatory damages, specific performance by E*Trade, punitive damages, costs and attorneys' fees. The respondents, including Hernandez, requested the dismissal of the Statement of Claim in its entirety, the expungement of all references to the claim and arbitration from the CRD records of the individual respondents, costs and attorneys' fees. An arbitration was held from December 7-10, 2009. The arbitration award was issued on February 3, 2010, and, among other things, awarded Horowitz $93,953.60 in attorneys['] fees and costs for which E*Trade and Hernandez were jointly and severally liable. The award also recommended the expungement of the CRD records of all three of the other individual respondents but explicitly stated "Respondent Hernandez's request for expungement is denied."

Hernandez claims that an exculpatory piece of evidence, a voicemail from Horowitz, was excluded from this arbitration because it was produced late by his counsel. Hernandez chose not to file a Petition to Vacate the February 3, 2010 award which denied Hernandez's claim for expungement. Instead, he filed a "statement of claim" **thirty months** later on August 22, 2012 to seek expungement after the same issue was already decided on its merits. Hernandez is collaterally estopped from raising the same claim and benefiting from an opposite award.

> Collateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination

- 13 -

in the prior proceeding was essential to the judgment. ***Weissberger v. Myers***, 90 A.3d 730, 733 (Pa. Super. 2014) (citation omitted).

In the instant matter, the issue of expungement of the Horowitz complaint was fully litigated and a final decision was made on its merits two and one-half years before Hernandez filed his Statement of Claim. "An award of arbitrators from which no appeal is taken has the effect of a final judgment. An unappealed from award is final and estops the party against whom it is made from proceeding further with the same cause of action." ***Ottaviana v. Southeastern Pennsylvania Trans. Authority***, 361 A.2d 810, 814-15 (Pa. Super. 1976) (citations omitted).

An arbitration award will be vacated when "such bad faith, ignorance of the law and indifference to the justice of the result" occurs. ***Allstate Insurance Company v. Fioravanti***, 229 A.2d 585, 589 (Pa. 1973) "In an arbitration proceeding, an irregularity refers to the process employed in reaching the result of the arbitration, not to the result itself." ***Chervenak, Kean & Co., Inc. v. Hotel Rittenhouse Associates, Inc.***, 477 A.2d 482, 485 (Pa. Super. 1984) Although courts have generally denied relief where an irregularity has been alleged, certain procedural irregularities here warranted vacatur of arbitration awards. ***See Alaia v. Merrill Lynch, Pierce, Fenner & Smith, Inc.***, 928 A.2d 273 (Pa. Super. 2007) (finding an irregularity when an arbitration panel effectively altered a Statement of Claim by entering an award against a party from whom claimants had not sought relief and failing to enter an award against a party from whom claimants had sought relief) ….

The second arbitration on the expungement of the Horowitz complaint constitutes a procedural irregularity because it is a repeat of the same arbitration proceeding previously decided on its merits.

****

In the instant matter, all of the conditions giving rise to collateral estoppel are clearly present. The identical issue whether the Horowitz customer complaint against Hernandez should be expunged was decided in the prior arbitration. The 2010 award from the arbitrator was unappealed and, thus, a final judgment on the merits. The party, Hernandez, against whom the doctrine

is being asserted, was the same in both the 2010 and 2013 arbitration proceedings. Lastly, Hernandez had a full and fair opportunity to litigate the issue in the prior proceeding.

****

Relitigating the previously decided issue of expungement of the Horowitz customer dispute was precluded and constitutes an irregularity warranting vacatur. Any other conclusion would allow unlimited, repetitive arbitration proceedings without regard to the finality or collateral estoppel. Thus, it was proper to vacate the portion of the Award made on December 24, 2013 which expunged Horowitz's complaint.

Trial Court Opinion, 7/22/2015, at 12–15 (footnote omitted).

Based on our review, we discern no abuse of discretion in the trial court's finding of an "irregularity" with regard to expungement of the Horowitz complaint, based upon the fact that a prior arbitration panel had denied Hernandez's expungement request of the Horowitz complaint. In this regard, we note:

> [I]rregularity refers to the process employed in reaching the result of the arbitration, not the result itself. A cognizable irregularity may appear in the conduct of either the arbitrators or the parties. Our Supreme Court has stated that the phrase "other irregularity" in the process employed imports "such bad faith, ignorance of the law and indifference to the justice of the result" as would cause a court to vacate an arbitration award.

*Toll Naval Assocs. V. Chun-Fang Hsu*, 85 A.3d 521, 529 (Pa. Super. 2014), *citing* *Allstate Insurance Company v. Fioravanti*, 299 A.2d 585, 589 (Pa. 1973). "The phrase 'other irregularity' … is the most definitionally elastic of the grounds for vacatur." *Fioravanti*, at 589.

Here, the arbitrator's decision that allowed expungement of the Horowitz complaint was based on evidence not presented at the earlier arbitration.[10] However, this justification was error since the consideration of additional evidence permitted **relitigation** of the previously decided claim in violation of collateral estoppel.[11] As such, we conclude the Award evidences

_____

[10] The arbitrator explained:

> During [the Horowitz arbitration], Mr. Horowitz testified that he listened to every voicemail and "if I heard the word 'auction' I would have known I had the wrong security." During the expungement hearing, [Hernandez] played the recording of a voicemail (which was not permitted into evidence in the Horowitz arbitration because it was produced late by counsel) he left for Mr. Horowitz, mentioning the word "auction" twice and stating "we will be in Monday's auction with 7 day paper." Although [Hernandez] lost the Horowitz arbitration and was required to pay counsel fees (where this recording, and 4-5 other[s] like it were not admitted), in a subsequent arbitration with [E*Trade] where the recordings were admitted, the panel did not hold him responsible for fees.

> … [A]n award of expungement is justified in this case because the recording of [Hernandez's] voicemail to Horowitz, which was excluded from evidence in [Horowitz] Case # 09-00708 below and would have challenged the credibility of Mr. Horowitz's testimony, was admitted and subject to additional corroborating testimony in this record.

Award, 12/24/2013, at 3–4.

[11] As the trial court reasoned in its decision, the additional evidence presented by Hernandez was not a valid reason for the arbitrator to reopen the issue of expungement of the Horowitz complaint.

> Hernandez's claim that exculpatory evidence was not introduced in the 2010 arbitration because of its untimely

*(Footnote Continued Next Page)*

"ignorance of the law and indifference to the justice of the result." **Fioravanti, supra**, at 589. While Hernandez attempts to cast the collateral estoppel issue as to the Horowitz complaint as "at most, an error of law," the cogent analysis of Judge Haaz fully supports its determination that an irregularity warranting vacatur occurred in the arbitrator's award as to the Horowitz complaint. **See** Trial Court Opinion, **supra**. Accordingly, we conclude there is no basis upon which to disturb the decision of the trial court that vacated the award with respect to the Horowitz complaint.

## ATTORNEY GENERAL'S APPEAL

## 1316 EDA 2015

The Attorney General first contends that the expungement award is not subject to confirmation because the arbitration did not involve a

*(Footnote Continued)* ─────────────

> disclosure by his own attorney is of no moment. As previously stated, Hernandez did not file a petition to vacate the 2010 arbitration award. Moreover, "The binding effect of a former adjudication does not depend upon the evidence or arguments presented. Inadvertent omission of available evidence is never an acceptable ground for a new action or a new trial. … Res judicata encompasses not only those issues, claims or defenses that were actually raised in the prior proceeding, but also those which could or should have been raised and were not." **Scott v. Mershon**, 657 A.2d 1304, 1307 (Pa. Super. 1995) (internal citations omitted).

Trial Court Opinion, 7/22/2015, at 15 n.8.

"dispute" and because the award was only a "recommendation." The Attorney General takes the position that since the named respondent E*Trade took no position in the arbitration proceeding, there was no "dispute" and therefore there was no valid arbitration. The Attorney General also contends that because the arbitrator used the word "recommend" in the Arbitration Award, there was no Award that could be confirmed by the court. We find no merit in these arguments.

Here, E*Trade was properly named as a respondent in the expungement action, and could have objected to Hernandez's expungement requests. Moreover, even though E*Trade took no position on the expungement requests, the arbitrator was free to deny relief as to any of the complaints. *See* FINRA Rule 13805(c) (requiring arbitrators to indicate in the arbitration award which of the FINRA Rule 2080 grounds for expungement apply and to provide a brief written explanation). Accordingly, we reject the Attorney General's argument that there was no valid arbitration because there was no "dispute."

Likewise, the Attorney General's argument that because the word "recommendation" is used in the body of the Arbitration Award the Award is not confirmable, is unavailing. The only Pennsylvania case cited by the Attorney General is *Fastuca v. L.W. Molnar & Associates*, 10 A.3d 1230 (Pa. 2011), which is not controlling since, as the trial court explained:

> In *Fastuca*, the court held that the arbitrator's findings in a partnership dissolution claim did not amount to a final award because they did not fully resolve the dispute between the

- 18 -

parties. The arbitrator in *Fastuca*, unlike the instant matter, retained jurisdiction and contemplated a future hearing to value the partnership.

Trial Court Opinion, 7/22/2015, at 9.

Here, the arbitrator's decision contains the heading "Award" in two places, as well as introductory language that "the Arbitrator has decided **in full and final resolution** of the issues submitted for determination as follows," explanatory language (as to the Horowitz complaint) that "an award of expungement is justified in this case," and concluding language that "this instrument … is my award." Award, FINRA Dispute Resolution, 12/24/2013, at 1–2, 4–5 (emphasis supplied). Notwithstanding the arbitrator's statement that "recommends" the expungement of eight customer complaints, *see id.* at 2, ¶1, the wording of the arbitrator's decision clearly demonstrates that it was, in fact, an award of expungement, and not a recommendation. Accordingly, we conclude the Attorney General's position that the arbitrator's decision was not a confirmable award is groundless.

Next, in the alternative, the Attorney General argues that if the arbitration award was confirmable, the trial court erred in denying in part the counter-petition to vacate the arbitration award. The Attorney General maintains irregularities within the meaning of 42 Pa.C.S. § 7341 warranted vacatur. Specifically, the Attorney General claims the Award was irregular because (1) expungement of the Horowitz and Wechsler Complaints was

barred by *res judicata*,[12] (2) as to the remaining customer complaints, the arbitrator failed to properly apply the applicable rules and standards, and (3) the arbitration was conducted without notice to or participation of the complainants.

We have already determined the Award was "irregular" as to the Horowitz complaint. The Wechsler complaint, however, does not warrant the same analysis. In the Wechsler arbitration, the claimants were David and Amy Wechsler and the respondent was E*Trade Securities, LLC. The arbitration resulted in an award favorable to the Wechslers. However, with regard to the issue of expungement of the Wechsler complaint from Hernandez's securities license, the Wechsler Award stated:

> [E*Trade's] request for expungement of non-party Marcus Hernandez' CRD records is denied; [E*Trade] did not pursue the request at the hearing.

Wechsler Award, 6/4/2010, at 2.

Unlike the Horowitz arbitration, Hernandez was not a named respondent in the Wechsler arbitration; only E*Trade was named as a respondent. The Attorney General, however, asserts Hernandez stood in privity with his former employer, E*Trade, that E*Trade asserted expungement relief on Hernandez's behalf, and, therefore, Hernandez was

---

[12] The Attorney General notes that *res judicata* "encompasses two related, yet distinct principles: technical *res judicata* and collateral estoppel. ...." Attorney General's Brief at 52–53, *citing* **J.S. v. Bethlehem Area School District**, 794 A.2d 936, 939 (Pa. Cmwlth. 2002).

collaterally estopped from relitigating issues decided in the FINRA expungement proceeding. In support of this contention, the Attorney General cites two cases. *See* Attorney General's Brief at 56, *citing* ***Irizarry v. Office of Gen. Counsel***, 934 A.2d 143 (Pa. Cmwlth. 2007); and ***Penns Valley Area Sch. Dist. v. Mid-State Constr. Inc.***, 14 Pa. D. & C. 5th 273, 283 (Pa. Com. Pl. 2010).

In ***Irizarry, supra***, the Commonwealth Court found collateral estoppel applied to a prior labor arbitration award and that Irizarry was barred from litigating an action against the Office of General Counsel, because "[w]hile the arbitration action was nominally between the Department and the Union, Irizarry was in privity with the Union as the grievant in the action before the arbitrator." ***Id.*** at 152. In ***Penns Valley Area Sch. Dist., supra***, in an action by the school district for reimbursement of costs to replace a defective gymnasium floor, the Centre County Court of Common Pleas applied collateral estoppel to the issue of defective gymnasium floor that had been litigated at prior arbitration, finding, *inter alia*, that subcontractor and contractor "shared a contractual relationship and their interests in the arbitration proceedings were substantially identical." ***Id.*** at 283.

We find these cases to be non-binding and inapposite to the issue of privity between a non-party and former employer. Although the Attorney General contends that E*Trade represented Hernandez's interests by asserting an expungement claim on his behalf, and that Hernandez —

- 21 -

through E*Trade — had a full and fair opportunity to litigate the issue of expungement of the Wechsler complaint, we agree with the assessment of the trial court, as follows:

> **The Wechsler complaint sits in a different posture because Hernandez was not a named respondent in the Wechsler's statement of complaint.** The Wechsler statement of complaint was filed on May 19, 2009 solely against E*Trade. An award was issued on June 4, 2010 in favor of the Wechslers and stated "Respondent's request for expungement of non-party Marcus Hernandez's CRD records is denied; Respondent did not pursue the request at the hearing." At the time of the hearing, there was no privity between E*Trade and Hernandez because Hernandez left E*Trade in 2008. The award clearly stated that E*Trade did not pursue this claim for relief. The expungement request claim was not fully litigated at the Wechsler arbitration and the doctrine of collateral estoppel does not apply. Hence, there was no irregularity with regard to the Wechsler arbitration.

Trial Court Opinion, 7/22/2015, at 15–16 (emphasis added). Accordingly, we reject the Attorney General's argument that the Award was irregular as to the Wechsler complaint.

The Attorney General next claims that the Award is irregular as to the six remaining customer complaints because the arbitrator failed to properly apply the applicable rules and standards. Specifically, the Attorney General relies on FINRA Rule 13805(c), which requires arbitrators to indicate in the arbitration award which of the FINRA Rule 2080 grounds for expungement apply and to provide a brief written explanation. In turn, FINRA Rule 2080 sets forth the following grounds for expungement:

(A)   the claim, allegation or information is factually impossible or clearly erroneous;

(B)    the registered person was not involved in the alleged investment-related sales practice violation, forgery, theft, misappropriation or conversion of funds; or

(C)    the claim, allegation or information is false.

FINRA Rule 2080.

Here, the arbitrator's Award of December 24, 2013, that recommended expungement of the eight customer complaints, stated, in relevant part:

Pursuant to Rule 13805 of the Code, the Arbitrator has made the following Rule 2080 affirmative findings of fact:

The claim, allegation, or information is factually impossible or clearly erroneous;

The registered person was not involved in the alleged investment-related sales practice violation, forgery, theft, misappropriation or conversion of funds; and

The claim, allegation, or information is false.

The Arbitrator has made the above Rule 2080 findings based on the following reasons:

[Hernandez] left [E*Trade] before the 2008 Auction Rate Securities ("ARS") market freeze and had no knowledge of that event prior thereto. Up until that point, based upon approximately twenty years of performance, [Hernandez] properly believed and told clients that ARS were a more conservative, AAA-rated alternative to Certificates of Deposit, offering higher interest returns. I further find, based upon this record, that these statements to clients were not misrepresentations or investment-related sales practice violations. Further, given the nature of [E*Trade's] operation and the fact that many of these eight clients were first solicited by a Relationship Manager, and spoke with Call Center Financial Advisors other than [Hernandez] while trading with [E*Trade], there is no clear evidence that [Hernandez] was the registered representative involved in many of the transactions upon which the CRD complaints were based.

Award, 12/24/2013, at 2–3.[13]

The Attorney General contends the arbitrator's findings were inadequate to discharge the Arbitrator's obligation under the FINRA Rules. We are not persuaded by this argument. Rather, our review confirms the analysis of the trial court that rejected this claim, as follows:

> Here, the Attorney General is asking the court to address the merits of the case and hold that the Arbitrator's facts do not support his findings. The Attorney General describes numerous findings as irrelevant and inadequate. … The Arbitrator made his decision and explained his reasoning. The court cannot vacate an award even assuming his logic or reasoning was flawed.

Trial Court Opinion, 7/22/2015, at 16–17.

Nor do we find merit in the Attorney General's argument that an irregularity occurred in the arbitration because the parties whose truthfulness Hernandez put at issue were not notified of or provided an opportunity to participate in the proceeding. There is no dispute that the failure to notify or include the complaining customers did not violate the FINRA Rules **in effect at the time**. *See* Trial Court Opinion, 7/22/2015, at 17. Therefore, the Attorney General's final claim fails.

In sum, we find no merit in the argument of Hernandez that the trial court abused its discretion in vacating the arbitration award as to the

---

[13] The arbitrator's findings specific to expungement of the Horowitz complaint are stated in succeeding paragraphs. *See* Award, 12/24/2013, at 3–4.

- 24 -

Horowitz complaint. We also find no merit in the arguments of the Attorney General that the court abused its discretion in confirming the other seven customer complaints. Accordingly, we affirm.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/14/2016